Judge Rowan
delivered the opinion of the court.
Benjamin Terry, sen. on the 28th of December, 1769, made his last will and testament, wherein was contained the following clause: — “I lend to my daughter Eezia Mur“phy, two negroes, namely, Henry and Phillis, during her “natural life, and after her decease, to be equally divided “between her children she had by her former husband, Jas. “Scott, and all her other children that she lias, or should “have by her present husband, Richard Murphy,”
H'slsvesue devised to a wUlTremain-der over, the ‘SSUR of the ¿⅛⅛*5’ (⅛ tenancy for life,go to him ⅛ remainder after the termination of the estate for life.
*533 Phillis, after the date of the will,- and during the life of the testator, had a child named Absalom ¡---upon the testator’s death, she and the child Absalom went into the possession of the said Kezia and Richard Murphy. Not long afterwards, she had a daughter, called Celia, who, during the life of the said Kezia, had three children, Lewis, Jinny and Simon. Kezia departed this life, as did (shortly after-wards) Henry and Phillis. Richard Murphy, who survived his wife Kezia, retained the possession of the five surviving negroes, and claimed them as his own, in right of his wife. The court below decreed the slaves to the children of the said Kezia; and as they were not susceptible of a division into eight parts, decreed them to be sold, and the money for which they should sell, to be divided among the eight children of the said Kezia. The court also caused the hire of the said slaves, during their detention from the complainants, to be ascertained by a jury, and decreed them their proportions of it.
It was insisted by the counsel for the plaintiffs in error, that the tenant for life of a female slave, was entitled to the children of such slave born during the tenancy. They urged the analogy between the case of tenant for 1⅝, of live stock, and the present case. In that case the tenant, according to the settled lav\', has a right to the young produced during the tenancy. In this case they contended the reason was stronger in favor of the claim of the tenant. The loss of the parent slave’s labor during the pregnancy of the mother and the infancy of the child, was one which did not happen in the case of live stock, and formed an additional reason in favor of the tenant’s claim to the young in this description of property. That while the property in the infant slave formed a just and necessary compensation to the tenant for the loss of the parent’s labor, during the periods aforesaid, it formed also a strong incentive with the tenant, to extend to the slave and infant those kind regards, and affectionate attentions, to which their condition, on principles of humanity, gave them á strong claim.
What might be the opinion of the court upon this point, were it a matter of first impression, need not be stated. It is considered as a long and well settled rule, that the children of a female slave, horn during the tenancy for life, shall go with their mother, to the claimant in remainder. This rule has also its sanction in some of the strongest,and ten-dsrest feelings of our nature. The mother is not, by its *534 operation, torn from her infant child* nor is the sucking child torn from the breast of its mother. The mother and her children pass together, from the tenant for life, to hirq in remainder. But whatever reasons might suggest themselves, either of interest or feeling, the rule above suggested has been too long established and acquiesced in, as well in Virginia as in this state, to he now disturbed.
Talbot for plaintiff, Haggin for. defendants in error.
A child horn in the life of the testator, but after making the will, does not pass by a devise of the mother.
If a division of slaves, coming by descent, cano' be had in nu-mero, they may be sold, and the price divided, se-us if the slaves are held by purchase, the chancellor may the* de cree a division, not a sale.
The hire-age of slaves detain’ from the owner, and ultimately decreed, should be as-ceri ained by commissioners, not by a jury.
The decree, therefore, of the court below, so far as It determines that the slaves in question, bom after the death of the testator, belong to the children of the said Kezia, is correct. It is also correct in awarding to the complainants hire for the said slaves during the time they have been kept out of their possession since their title accrued.
But the decree is erroneous, so far as it embraces the slave Absalom, as he (having been' born before the; death of tbe testator) did not pass by the will to Kezia, or to her children. It is moreover erroneous in directing a sale of the slaves. Slaves claimed by descent may (if a division in numero cannot be made) be decreed to be sold. But the, chancellor is invested with this power (in cases of this description only) by special act of the legislature. Slaves claimed by purchase may be divided by direction of the chancellor, but not so as to divest any one of the purcha^ sers, or legatees, of his right or interest therein. The partition should have been decreed according to the doctrine settled by this court in the case of Coleman against Hutch-eson, reported in 3d Bibb, pa. 209. That was a similar case. The possession of the slaves should have been decreed to (he claimants respectively, in such portions, for such periods, and in such order of succession, as ther number and character, and the number of the claimants, rendered most practicable and equitable. The hire of the slaves should have been ascertained by commissioners instead of a juryi
It is therefore decreed and ordered, that the decree of the court below be reversed with costs, and the cause remanded, with directions that proceedings be had therein, not inconsistent with the foregoing opinion.